**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**AT PIKEVILLE**
**CASE NO. 16-249-WOB**

**ALBEN ARNETT** **PLAINTIFF**

**v.**

**COMMISSIONER OF SOCIAL SECURITY** **DEFENDANT**

**OPINION AND ORDER**

This is a Social Security appeal filed by plaintiff, through counsel, pursuant to 42 U.S.C. §§ 405(g). In accordance with the Court's standard procedures, both plaintiff and the Commissioner have filed motions for summary judgment based upon the administrative record. Docs. 12, 14. After considering the record and applicable law, the Court concludes that the Commissioner's motion will be granted and the plaintiff's will be denied.

**I. Factual and Procedural History**

Plaintiff Alben Arnett filed an application for disability insurance benefits ("DIB") and supplemental security income ("SSI") in April 2013. Tr. (Doc. 10-1) at 213-220. Plaintiff alleged a disability onset date of July 4, 2010 (Tr. 213) due to polycystic kidney disease, "[v]ertebraes in back with pain," a neck injury, unspecified "[h]eart problems," and high blood pressure. Tr. 239. Plaintiff reported being 6'4" tall and weighing 230 pounds. *Id.* After his claims were denied initially and upon reconsideration (Tr. 52-99), plaintiff requested a hearing before an ALJ. Tr. 131-132. On March 3, 2015, an initial evidentiary hearing was held by ALJ Jerry Meade, at which plaintiff--represented by counsel-- testified. Tr. 29-41.

Plaintiff testified that he was born in 1963 and graduated from high school in 1982. Tr. 33. Plaintiff had not worked since July 4, 2010 due to "a back injury . . . kidney trouble . . . [and] very bad high blood pressure." *Id.* Plaintiff suffers from back pain daily which is

exacerbated by "a lot of normal activities" such as "[s]tanding too long, sitting too long." Tr. 34. However, plaintiff did not take any medications for his pain besides over the counter "[r]ubs and lotions." Tr. 34-35. Plaintiff has numerous cysts on his kidneys, which burst upon activities such as lifting heavy objects. *Id.* Plaintiff takes prescription medication for his high blood pressure, which has been present since he was seventeen. Tr. 37. The medication causes him to feel numbness in his hands, legs and feet, especially at night. *Id.* Plaintiff also takes prescription medication for diabetes. Tr. 38. He is able to drive short distances but lost his commercial driver's license in 2013 due to blood pressure issues. Tr. 38-39. At plaintiff's counsel's request, the ALJ ordered plaintiff to undergo a consultative physical exam and, consequently, the record was not closed at the conclusion of the hearing. Tr. 40.

On September 1, 2015, ALJ Meade conducted a brief second evidentiary hearing. Tr. 42-51. Plaintiff summarily testified that his condition had not improved since the previous hearing and he was unable to afford his blood pressure medication. Tr. 45-46. Gina Baldwin then testified as a vocational expert ("VE"). Tr. 47-50. The VE testified that from September 30, 1996 to the present plaintiff's only employment was as a millwright, which was considered a skilled job performed at the heavy level.[1] Tr. 48. The VE and the ALJ then engaged in the following colloquy:

> Q [by the ALJ] Ms. Baldwin, if you would, assume a hypothetical individual of the claimant's age, education and work experience who is able to lift and carry up to 20 pounds occasionally, ten pounds frequently. During an eight-hour day, the individual can sit a total of four hours, stand a total of two hours, walk a total of

---

[1] For Social Security purposes, jobs are classified as sedentary, light, medium, heavy and very heavy. *See* 20 C.F.R. §404.1567 (2017 version). "Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. If someone can do heavy work, we determine that he or she can also do medium, light, and sedentary work." 20 C.F.R. §404.1567(d). Light work, by contrast "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §404.1567(b).

four hours. Needs a sit/stand option at 30-minute intervals. The individual can occasionally operate foot control[s] with both feet and never climb ladders or scaffolds. Can occasionally climb ramps and stairs. Occasionally balance, stoop, kneel, crouch and crawl. Never be exposed to unprotected heights or moving mechanical parts.

Can occasionally be exposed to extreme cold, extreme heat, and vibrations. Can frequently operate a motor vehicle and can frequently be exposed to humidity and wetness, dust, odors, fumes and pulmonary irritants. Ms. Baldwin, I'm going to assume and past work is precluded by the lifting restriction?

A [by the VE] That is correct.

Q Are there unskilled jobs that such a person could perform?

A Yes, Your Honor. At the light work classification, mail clerk, regionally, and the region includes West Virginia, Kentucky and Ohio, 1,000 [jobs]. Nationally, 25,000. Parking lot attendant, regionally 1,400. Nationally 40,000. A third example would be house sitter, regionally, 1,000. Nationally, 15,000. There would be no sedentary work. . . .

Q Ms. Baldwin, is your testimony consistent with the *DOT* [Dictionary of Occupational Titles], including that sit/stand option in the hypothetical?

VE: The *DOT* is silent on the issue of a sit/stand/walk option; however, I base this on being a rehabilitation specialist for over 30 years and I completed onsite job analyses. I also utilized information from the *U.S. Department of Labor, Bureau of Labor Statistics*, occupational employment estimates, *U.S. Publishing Company* and [inaudible] Browse, which provides for this information.

Tr. 48-50.

The ALJ issued his decision on November 17, 2015, using the familiar five-step sequential evaluation process.[2] Tr. 12-23. Regarding plaintiff's claim for DIB, at Step 1 the

[2] Although a dispositive finding at any step terminates the ALJ's review, see *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered the sequential review considers and answers five questions:
1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

ALJ found that plaintiff did not engage in substantial gainful activity from the alleged onset date of July 4, 2010 through September 30, 2011, his date last insured. Tr. 14. At Step 2, the ALJ found that through the date last insured plaintiff had polycystic kidney disease and hypertension but those impairments were not severe because they did not significantly limit plaintiff's ability to perform basic work-related activities for twelve consecutive months. *Id.* The conclusion that plaintiff did not suffer from severe impairments through his date last insured meant that he was not entitled to DIB. *See, e.g., Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990) ("In order to establish entitlement to disability insurance benefits, an individual must establish that he became 'disabled' prior to the expiration of his insured status.").[3]

As to the SSI claim, having already determined that plaintiff had not engaged in substantial gainful activity since July 2010, at Step 2 the ALJ found that since the date the claim was filed plaintiff suffered from the following severe impairments: obesity, degenerative disc disease and chronic pain syndrome.[4] Tr. 15. The ALJ concluded, however, that plaintiff's polycystic kidney disease, diabetes, high blood pressure, chest pain, right shoulder pain and depression/anxiety were not severe impairments. Tr. 15-16. At Step 3, the ALJ found that

---

*See* 20 C.F.R. § 404.1520(a)(4). The five-step process is used for both DIB and SSI claims. *See, e.g., Burks v. Comm'r of Soc. Sec.*, 2013 WL 2152138, at *8 (N.D. Ohio May 17, 2013) ("The Commissioner uses a five-step sequential evaluation process to evaluate a DIB or SSI claim.").

[3] Unfortunately, the ALJ's opinion does not explicitly state at that point that the lack of a severe impairment meant plaintiff was not entitled to DIB, even though that was the inevitable result of such a finding. The potential for confusion inherent in resolving two claims in one opinion could have been minimized if the opinion had more consistently delineated which findings applied to the DIB claim, which applied to the SSI claim and which applied to both. However, the failure to draw such explicit lines of demarcation is an inconvenience, not a reversible error.

[4] The ALJ focused on the impairments plaintiff had as of the date he applied for SSI (April 2013) because plaintiff could not receive SSI until the month after he filed his application. *See* 20 C.F.R. §416.335 ("When you file an application in the month that you meet all the other requirements for eligibility, the earliest month for which we can pay you benefits is the month following the month you filed the application. If you file an application after the month you first meet all the other requirements for eligibility, we cannot pay you for the month in which your application is filed or any months before that month.").

plaintiff did not have an impairment, singly or in combination, which met one of the listed impairments. Tr. 17-18. Next, as a necessary antecedent to Step 4, the ALJ found that plaintiff had the following residual functional capacity ("RFC"),[5] which largely tracks his hypothetical to the VE. Specifically, the ALJ found plaintiff had the residual functional capacity to:

> lift and carry up to 20 pounds occasionally and 10 pounds frequently. During an eight-hour day, he can sit a total of four hours; can stand a total of two hours; and can walk a total of four hours. He needs a sit/stand option at 30-minute intervals. The claimant can occasionally operate foot controls with both feet. He can never climb ladders or scaffolds. He can occasionally climb ramps and stairs. He can occasionally balance, stoop, kneel, crouch and crawl. He can never be exposed to unprotected heights or moving mechanical parts. He can occasionally be exposed to extreme cold; extreme heat; and vibrations. He can frequently operate a motor vehicle. He can frequently be exposed to humidity and wetness, dust, odors, fumes, and pulmonary irritants.

Tr. 18 (emphasis omitted). Given that RFC, at Step 4 the ALJ concluded that plaintiff could not perform his past relevant work. Tr. 21. At Step 5, the ALJ concluded that there are jobs that exist in significant numbers in the national economy at the light exertional level which plaintiff could perform, including mail clerk, parking lot attendant and house sitter. Tr. 21-22. Thus, the ALJ found that plaintiff was not disabled. Tr. 22-23.

Plaintiff promptly sought review of the ALJ's decision by the Appeals Council (Tr. 7-8) but in October 2016, the Appeals Council denied plaintiff's request for review. Tr. 1-3. ALJ Meade's decision thus became the Commissioner's final decision. Plaintiff then timely commenced this action. Doc. 1. Relevant medical/psychological evidence will be discussed as necessary later in this opinion and order.

**II. Analysis**

**A. Standards of Review**

---

[5] RFC "is the most plaintiff can do, not the least, after taking into consideration physical and mental limitations." *Branon v. Comm'r of Soc. Sec.*, 539 Fed. App'x 675, 677 n.3 (6th Cir. 2013).

In a Social Security appeal, the Court is to determine whether the ALJ's non-disability finding is supported by substantial evidence and made pursuant to proper legal standards. 42 U.S.C. §§ 405(g). *See also Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Substantial evidence is "defined as more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quotation marks and citation omitted). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The [Commissioner's] findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a zone of choice within which the [Commissioner] may proceed without interference from the courts. If the [Commissioner's] decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (quotation marks and citations omitted). *See also Rogers*, 486 F.3d at 241 ("In deciding whether to affirm the Commissioner's decision, it is not necessary that this court agree with the Commissioner's finding, as long as it is substantially supported in the record."). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case de novo, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). Even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

The plaintiff bears the burden of proof through the first four steps of the sequential process but the burden shifts to the Commissioner at Step 5. *Rabbers*, 582 F.3d at 652. To be entitled to benefits, a person must be disabled within the meaning of the Social Security Act, which is means that a person must present sufficient evidence to show that, during the relevant time period, he suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him unable to engage in substantial gainful activity. *Id.* at 651-652 (citing 42 U.S.C. §§ 423(d)(1)(A)).

**B. SSR 83-12 and the Sit/Stand Option**

Plaintiff argues that the ALJ failed to comply with Social Security Ruling ("SSR") 83-12's guidance regarding sit/stand options. According to plaintiff, SSR 83-12 "clarifies that sit/stand options are not available in unskilled work" so he should have been found disabled because he was only able to perform light, unskilled work. Doc. 12-1 at 6. Because plaintiff misconstrues SSR 83-12, the Court disagrees.

SSR 83-12, which can be found at 1983 WL 31253, provides in relevant part:

> In some disability claims, the medical facts lead to an assessment of RFC which is compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and standing. The individual may be able to sit for a time, but must then get up and stand or walk for awhile before returning to sitting. Such an individual is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work (and for the relatively few light jobs which are performed primarily in a seated position) or the prolonged standing or walking contemplated for most light work. (Persons who can adjust to any need to vary sitting and standing by doing so at breaks, lunch periods, etc., would still be able to perform a defined range of work.)
>
> *There are some jobs in the national economy--typically professional and managerial ones--in which a person can sit or stand with a degree of choice.* If an individual had such a job and is still capable of performing it, or is capable of transferring work skills to such jobs, he or she would not be found disabled. *However, most jobs have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task. Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will. In cases of unusual limitation of ability to*

> *sit or stand, a VS [VE] should be consulted to clarify the implications for the occupational base.*

*Id.* at *4 (emphasis added).

Plaintiff's core argument is not new. For example, the Seventh Circuit rejected a similar argument as follows:

> Powers relies heavily on Social Security Ruling 83–12, which states that "unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will." Yet [VE] Janikowski was asked the number of jobs that did have a sit/stand option, so this Agency description of what the case is "ordinarily" does not refute, by itself, the opinion of an expert in response to a specific question. Even if Janikowski's testimony were considered to contradict the description of sedentary work in the Dictionary of Occupational Titles, which we do not believe it does, a hearing officer is entitled to rely on expert testimony that contradicts such authorities. Therefore, substantial evidence supported the finding that a significant number of jobs existed that could accommodate Powers' skill level and physical needs.

*Powers v. Apfel*, 207 F.3d at 436-437 (6th Cir. 2000). In this circuit, the United States District Court for the Western District of Kentucky has also rejected a functionally indistinguishable argument. *See Bennett v. Astrue*, 2008 WL 345523, at *6 (W.D. Ky. Feb. 7, 2008).[6] By

---

[6] In *Bennett*, Judge Johnstone adopted Magistrate Judge King's report and recommendation, which provided in relevant part:

> Ms. Harcourt argues that the ALJ impermissibly used a "sit/stand" option in denying her claim. Pl. Br. at 8-9. She bases her argument on Social Security Ruling (SSR) 83-12 and *Johnson v. Barnhart*, No. 04-3438-CV-W-HFS, 2006 WL 373896, at *8 (W.D.Mo.2006), which relied on SSR 83-12 to hold that a claimant limited to unskilled work with a sit/stand option was disabled.
>
> SSR 83-12 explains: "In cases of unusual limitation of ability to sit or stand, a VS [vocational specialist—i.e., a VE] should be consulted to clarify the implications for the occupational base," which is what the ALJ did in this case. This court does not read *Johnson* as adopting a blanket finding that no unskilled jobs allow a sit/stand option. The vocational expert in *Johnson* initially had testified that the claimant could have worked some light and sedentary unskilled jobs, but when confronted with SSR 83-12, apparently conceded that his testimony was inconsistent with it. 2006 WL 373896 at *8. *Whatever the testimony was in that particular case, it is clear that SSR 83-12 itself does not adopt a view that no unskilled jobs allow a sit/stand option*:

contrast, plaintiff cites to no cases to support his argument that SSR 83-12 flatly forecloses the possibility of a sit/stand option for unskilled jobs.

The VE testified that, though the DOT does not address sit/stand options, her conclusions were based upon both her experience and various professional resources. "The Sixth Circuit and other districts in this circuit have ruled that while the DOT does not explicitly refer to sit/stand options, a vocational expert's opinion regarding such options are not contradictory to the DOT, because the VE's opinions are based upon his/her personal experience and knowledge." *Drossman v. Astrue*, 2011 WL 4496568, at *7 (N.D. Ohio July 15, 2011) (citing cases), *report and recommendation adopted at* 2011 WL 4496561 (N.D. Ohio Sept. 27, 2011). Moreover, as the court astutely noted in *Bennett*, "[i]f counsel believed that there was an actual conflict between the VE's testimony and the DOT, he should have explored the matter at the hearing rather than first complaining upon judicial review." 2008 WL 345523, at *6.

In short, notwithstanding plaintiff's argument to the contrary, SSR 83-12 speaks of typical situations only and does not foreclose the possibility that unskilled work could include a

---

> Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will. In cases of unusual limitation of ability to sit or stand, a VS [vocational specialist] should be consulted to clarify the implications for the occupational base.
>
> SSR 83-12, 1983 WL 31253, *4 (emphasis added). The ALJ in this case followed the instruction of the second quoted sentence and relied on the vocational expert's testimony to find that Ms. Harcourt would be able to do some unskilled jobs that have sit/stand options.
>
> In *Powers v. Apfel*, 207 F.3d 431 (7th Cir.2000), the Seventh Circuit explicitly rejected the argument that the plaintiff advances here. The vocational expert in *Powers* testified that a number of unskilled jobs had a sit/stand option. The Seventh Circuit reasoned that the description in SSR 83-12 of what is the case "ordinarily" does not refute the specific testimony of a vocational expert testifying at the hearing in response to a specific question. 207 F .3d at 436. That reasoning applies directly to this case.

2008 WL 345523, at *6 (emphasis added).

sit/stand option. Indeed, the VE testified as to such jobs' existence, and explained that her conclusions were based on both her professional experience and information gleaned from professional resources. The ALJ was consequently permitted to rely upon the VE's testimony and plaintiff's argument fails.

**C. Consideration of All Severe Impairments**

Plaintiff's next argument is that "the ALJ errored [sic] multiple times at step two by failing to consider all the claimant's severe impairments for both his [DIB] and his [SSI]." Doc. 12-1 at 1 (emphasis omitted). Under 20 C.F.R. §404.1522(a) (2017 version), an impairment "is not severe if it does not significantly limit your physical or mental ability to do basic work activities." The ALJ found plaintiff to have no severe impairments as to the DIB claim and found obesity, degenerative disc disease and chronic pain syndrome to be severe impairments as to the SSI claim. Tr. 14-15.

Plaintiff asserts the ALJ should have found his mental impairment, hypertension and diabetes to all be severe impairments. Doc. 12-1 at 7-10. Indeed, there is evidence in the record to support a conclusion that plaintiff suffered from all three conditions. For example, William Rigby, Ph.D., performed a consultative examination of plaintiff in August 2013 and diagnosed him as having depressive disorder and anxiety disorder. Tr. 444. However, Dr. Rigby also noted that plaintiff "appears free of major mental health problems such as psychotic conditions" and his self-reported "range of depressive and anxiety related symptoms" were "moderate in degree and functionally related to [his] physical problems." *Id.* Similarly, Dr. Thomas Smith, who treated plaintiff for physical problems, noted in his office notes that plaintiff "looks mildly to moderately depressed." Tr. 350.[7] Additionally, among other conclusions, R. Roy Durrett,

[7] The Court notes a mental health diagnosis based solely upon a person's appearance is unscientific, to say the least.

M.D., Ph.D., of Kentucky Mountain Health diagnosed plaintiff as suffering from hypertension in May 2013. Tr. 435. Finally, plaintiff was diagnosed with diabetes at the Highlands Regional Medical Center in 2014. Tr. 520.

Despite those diagnoses, plaintiff does not cite to any medical evidence of record opining that those impairments are severe, either singly or in combination with other impairments. Plaintiff seems to conflate merely being diagnosed with a medical or mental condition to mean that the condition is severe and consequently entitles him to benefits. However, as the United States District Court for the Western District of Tennessee cogently noted in a recent opinion, "[t]he mere fact that Plaintiff has a diagnosis or diagnoses does not mean that she has disabling limitations. It is well settled that a diagnosis, in and of itself, says nothing about the severity of the condition. Instead, the ALJ must consider the actual work-related impact of those diagnoses." *Petty v. Comm'r of Soc. Sec.*, 2017 WL 396791, at *3 (W.D. Tenn. Jan. 30, 2017) (quotation marks, footnote and citations omitted). The fact that plaintiff has not cited to the opinion of a medical or mental health provider who opined that plaintiff is disabled under the terms of the Social Security Act is fatal to his argument.

However, even if the Court were to assume—solely for purposes of argument—that those three impairments are severe, the ALJ's failure to so find would be a harmless error as plaintiff has not shown how the conditions were disabling (i.e., prevented plaintiff from engaging in substantial gainful activity). The ALJ discussed Dr. Rigby's opinions at length and explained why he gave them little weight. Tr. 20.[8] Moreover, Dr. Rigby explicitly noted that plaintiff

---

[8] This Court has previously rejected an argument almost identical to that raised by plaintiff in a case in which Dr. Rigby provided a very similar diagnosis--and the claimant's attorney was the same as is this plaintiff's. *See Johnson v. Colvin*, 2016 WL 3257124, at *4-5 (E.D. Ky. June 13, 2016) ("Likewise, the ALJ did not err in determining that Johnson's mental impairments were non-severe. The ALJ noted that Johnson's GAF score was 75, indicating no more than slight impairment in social or occupational functioning. She also highlighted that Dr.

"appears free of major mental health problems . . . ." Tr. 444. The other providers did not conclude that the three impairments listed by plaintiff were severe enough to prevent him from engaging in substantial gainful activity. In addition, because the ALJ did find that plaintiff suffered from severe impairments as to the SSI claim, the failure to find additional severe impairments at Step 2 is "legally irrelevant" to the overall SSI determination. *Anthony v. Astrue*, 266 Fed. App'x 451, 457 (6th Cir. 2008).[9] In short, the Court finds no reversible error stemming from the ALJ declining to find the three impairments at issue to be severe.

**D. RFC**

---

Rigby found no impairment in Johnson's ability to understand, retain, and follow simple instructions and to sustain concentration. Further, she observed that Dr. Rigby's examinations revealed no memory problems or psychosis and that Johnson had normal thought content and orientation. In addition, the ALJ commented on Dr. Potter's findings that Johnson had intact judgment and insight, normal orientation, no nervousness or dementia, no psychosis, and no hallucinations . . . . The Claimant also argues that the ALJ failed to consider portions of Dr. Potter's and Dr. Rigby's findings that indicate the severity of his mental health issues . . . . While Dr. Rigby reported that Johnson suffered from mild-to-moderate functional depression and moderate impairment to maintain social interactions, he also stated that Johnson's most limiting conditions appear to be physical in origin and that the anxiety was only a secondary result. Additionally, Dr. Rigby indicated that the Claimant had no impairment to understand, retain, and follow simple instructions and could complete tasks in a normal time frame. Moreover, the psychologist noted that Johnson's social interactions were polite and cooperative and that he appeared to have appropriate social capabilities for his age and background. The ALJ was permitted to discount the portions of Dr. Rigby's opinion contradicted by Dr. Potter's and Dr. Perritt's opinions. Further, Dr. Rigby's opinion was internally inconsistent regarding Johnson's mental health conditions. In addition, the ALJ could discount the opinion because it was based in large part on the Claimant's self-report. The ALJ properly evaluated Dr. Potter's, Dr. Rigby's, and Dr. Perritt's opinions. Because substantial evidence supports her finding that Johnson's mental health conditions were non-severe, the ALJ did not err regarding that issue.") (quotation marks, citations and paragraph breaks omitted).

[9] The Sixth Circuit held in relevant part in *Anthony* as follows:

> Anthony argues that the ALJ erred by failing to determine that all of Anthony's various impairments were "severe" at step two. In the Sixth Circuit, the severity determination is a de minimis hurdle in the disability determination process. [A]n impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education and experience. The goal of the test is to screen out totally groundless claims. . . . Anthony's argument, however, is misguided. The ALJ specifically found that Anthony's seizure disorder, cognitive disorder, and the after-effects of his broken leg qualified as severe impairments. Anthony therefore cleared step two of the analysis. This caused the ALJ to consider Anthony's severe and nonsevere impairments in the remaining steps of the sequential analysis. The fact that some of Anthony's impairments were not deemed to be severe at step two is therefore legally irrelevant. The ALJ, therefore, did not commit reversible err in this regard.

266 Fed. App'x at 457 (citations omitted).

Plaintiff next argues that the ALJ's RFC determination was improper because it did not include all of the limitations found by Dr. Pepi Granat, who completed a medical interrogatory in July 2015. Tr. 509-517. The ALJ generally found the limitations contained in Dr. Granat's opinion, such as the weight plaintiff can lift and carry, should be entitled to "great weight, as they are consistent with the objective medical evidence and are based on a thorough review and evaluation of the record." Tr. 20. Plaintiff's contention in this Court is that the ALJ did not incorporate all of Dr. Granat's limitations into the hypothetical asked to the VE, which in turn means that the ALJ's RFC is flawed. Specifically, plaintiff argues that the ALJ found in the RFC that plaintiff needs a sit/stand option at 30-minute intervals which "is inconsistent with Dr. Granat's limitations as Dr. Granat found that the claimant is limited to a ***<u>sit/stand/walk option</u>***." Doc. 12-1 at 11. In addition, plaintiff argues the ALJ erred by not including into the RFC/hypothetical to the VE that plaintiff can only walk one to two blocks without using a cane. *Id.* at 12.

Plaintiff's argument regarding the cane is utterly without merit. Dr. Granat checked a box answering "no" to the question of whether "the individual requires the use of a cane to ambulate?" Tr. 513. Dr. Granat also checked a box indicating that plaintiff's usage of a cane was not medically necessary. *Id.* Granted, Dr. Granat opined that plaintiff could only walk one to two blocks without using a cane but also handwrote that plaintiff "prefers to use something" to ambulate. *Id.*[10] An ALJ is not required to incorporate into a hypothetical to a VE or an RFC determination a condition which is not medically imperative or necessary, such as plaintiff's preference to use a cane. Indeed, when he completed a function report in 2013, plaintiff noted

[10] Unfortunately, the copy of Dr. Granat's report in the record before the Court does not contain the far-right edge of Dr. Granat's handwritten comments. Tr. 513.

that no physician prescribed a cane for him and the he used the cane “if I know that I’ll have to walk for extended periods of time (for extra stability)[.]” Tr. 269. In that same vein, Dr. Granat twice checked boxes indicating it was not medically necessary for plaintiff to use a cane to ambulate. Thus, the ALJ did not err in failing to incorporate plaintiff’s voluntary usage of a cane into the RFC and/or question to the VE.[11] *See, e.g., Mitchell v. Comm’r of Soc. Sec.*, 2014 WL 3738270, at *13 (N.D. Ohio July 29, 2014) (citing numerous cases for the conclusion that “[a]s there is no medical documentation establishing that Mitchell required the use of a cane and describing the circumstances when it is needed, the ALJ did not err by omitting the use of a cane from his hypothetical questions to the vocational expert.”).

Plaintiff’s argument regarding the failure to incorporate a sit/stand/walk option also fails. Dr. Granat opined by checking boxes on a form that plaintiff could sit/stand/walk for thirty to sixty minutes at one time without interruption and in an eight-hour workday he could sit a maximum of four hours, stand a maximum of two hours and walk a maximum of four hours. Tr. 513. Below that, Dr. Grant hand wrote “needs sit/stand/walk option due to variable pain from . . . spondylosis[.]” *Id.* In an extremely terse argument, unadorned with a citation to any supporting cases, plaintiff contends the ALJ’s finding that plaintiff needs a sit/stand option at thirty-minute intervals “is inconsistent with Dr. Granat’s limitations as Dr. Granat found that the claimant is limited to a ***<u>sit/stand/walk option</u>***.” Doc. 12-1 at 11. However, the VE specifically testified on the sit/stand/walk option, stating that “[t]he *DOT* is silent on the issue of a sit/stand/walk option; however, I base this on being a rehabilitation specialist for over 30 years

[11] In addition, plaintiff has not shown that the three jobs which the VE concluded plaintiff could perform under the limitations contained in the hypothetical would require walking more than a block or two without using a cane. In other words, adding a requirement that plaintiff be permitted to use a cane to walk more than a block or two would not have facially impacted plaintiff’s ability to perform substantial gainful activity. Moreover, plaintiff’s counsel did not take advantage of an opportunity to question the VE about the need to use a cane (or the sit/stand/walk option, which will be discussed in further detail shortly).

and I completed onsite job analyses." Tr. 50. Plaintiff's fleeting argument does not explain or show how adding a sit/stand/walk option would have negatively impacted plaintiff's overall RFC or his ability to perform the three jobs the ALJ concluded were available to him. The ALJ did not commit reversible error.

**E. Internally Inconsistent Opinion**

Very near the end of his medical interrogatory, Dr. Granat wrote "2010" in response to the following question: "However, if you have sufficient information to form an opinion within a reasonable degree of medical probability as to past limitations, on what date were the limitations you found above first present?" Tr. 517 (emphasis and capitalization omitted). In his final argument, plaintiff contends the ALJ's opinion is internally inconsistent because he explicitly gave great weight to Dr. Granat's opinion yet failed to find that plaintiff had any severe impairments as of September 30, 2011 (plaintiff's date last insured) even though Dr. Granat found that the limitations were present in 2010.

Plaintiff cites to no authority to support his argument. The Court does find it mildly curious that the ALJ did not mention Dr. Granat's statement that plaintiff's limitations were present in 2010. However, even if the Court were to leniently assume (solely for purposes of argument) that the omission was erroneous, the error would be harmless.

Simply put, Dr. Granat did not find that plaintiff's limitations were disabling. In other words, though he did note that plaintiff had some impairments and limitations, Dr. Granat did not opine that plaintiff had any severe, disabling limitations which prevented him from engaging in substantial gainful activity. To the contrary, the limitations imposed by Dr. Granat were largely used by the ALJ in the previously discussed hypothetical to the VE, who responded by noting that there were at least three occupations which plaintiff could perform. If the ALJ had

found that plaintiff had limitations as of 2010, at most the ALJ would have found plaintiff to have had severe impairments regarding the DIB claim. However, merely finding the presence of severe impairments would not have changed the overall outcome of the case as, again, plaintiff has not pointed to evidence showing that he was unable to engage in substantial gainful activity. Therefore, the Court agrees with the Commissioner that "even if the ALJ had explicitly stated that the limitations described by Dr. Granat were present back in 2010, and adopted his limitations for that period, the outcome for plaintiff's DIB claim would still be the same, i.e., the ALJ would have found Plaintiff capable of limited light work and, therefore, not disabled." Doc. 14 at 11.

## III. Order

For the foregoing reasons, **IT IS ORDERED**:

1. Plaintiff's motion for summary judgment (doc. 12) is **DENIED**;

2. The Commissioner's motion for summary judgment (doc. 14) is **GRANTED**; and

3. This case is hereby stricken from the Court's docket.

This, the 18th day of August, 2017




**Signed By:**
***William O. Bertelsman*** WOB
**United States District Judge**